# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEPHEN LEE SELDON, *et al*.,<br><br>    Defendants. | Case No. 2:07-CR-00135-KJD-LRL<br><br>**ORDER** |

Before the Court is Defendant Stephen Lee Seldon's ("Defendant") claim under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence (#389), as well as Defendant's sealed claim under 28 U.S.C. §2255 (#390). The Government opposed (#415) and Defendant replied (#426). In resolving this motion, the Court not only relied on the parties' arguments and its own clear recollections, but also reviewed the entirety of the trial transcript, totaling some 2,300 pages. In order to promote judicial economy, analysis of Defendant's claims will not follow the order in which Defendant presented them.

I. Conflict of Interest[1]

Defendant claims he is entitled to relief because his counsel, Ronald Richards ("Richards"), attempted to seduce and otherwise engage in inappropriate and unethical activity with Defendant's wife both prior to and during trial. While such allegations concerning Richards' conduct are unsurprising to the Court, and despite Richards' attempt to evade the question (#415; Ex. F at ¶44), they are insufficient to afford relief.[2]

"[A] defendant who raised no objection at trial must demonstrate . . . an actual conflict of interest[.]" Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). If an actual conflict affected counsel's performance, "prejudice is presumed." United States v. Wells, 394 F.3d 725, 733 (9th Cir. 2005). However, "the possibility of conflict is insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350. Stated differently, mere theoretical division of loyalties is not enough. Mickens v. Taylor, 535 U.S. 162, 163 (2002).

"An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Taylor, 535 U.S. at 172 n.5. In the Ninth Circuit, a conflict *exists* where "there was a basis for the interests of attorney and client to diverge with respect to any material issue or course of action-that is, that counsel actively represented conflicting interests." United States v. Baker, 256 F.3d 855, 860 (9th Cir. 2001). A conflict *adversely affects* counsel's performance if "some plausible alternative defense strategy or tactic might have been pursued but was not and . . . the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Wells, 394 F.3d at 733.

---

[1] Although originally filed under seal, both parties have proceeded to file materials dealing with this claim without petitioning the Court to seal them. Accordingly, the Court will not place this portion of the Order under seal.

[2] Although such conduct does not relieve Defendant of his justly imposed sentence, the Court notes that this same conduct very likely would subject Richards to discipline by the Bar.

Here, no party objected to Richards' representation of Defendant during the trial, requiring that Defendant show an "actual conflict" to obtain relief. Defendant does not attempt to demonstrate any conflict, but merely asserts that one exists due to Richards' pursuit of Mrs. Seldon (#426 at 6). While this suggests that a conflict might exist, mere existence is not enough. Defendant must also show a plausible alternative defense. The "plausible alternative defense" proposed by Defendant is that "Mrs. Seldon [and not Defendant] was responsible" (#426 at 6). While Defendant's alleged behavior is odious and unethical, asserting that Mrs. Seldon and not Defendant was responsible is not a plausible alternative theory. Defendant Stephen Lee Seldon and Mrs. Seldon were not merely co-defendants, but business partners. And not merely business partners, but spouses. In all relevant aspects, Defendant's life was fully enmeshed with Mrs. Seldon's. Regardless, the Ninth Circuit correctly noted that the evidence of Defendant's guilt is "overwhelming." (#312 at 4). A few highlights illustrate this point.

Doctor Gray testified that Defendant not only spoke at a conference where TRItox was injected, but told those present that TRItox was "cheaper and did the same work." (#262 at 469). A former nurse testified that Defendant claimed to have used the product and that Defendant claimed TRItox allowed the use of much more diluted doses (#262 at 613-18, 632).

James Bundy, Defendant's former employee, testified that Defendant had been "looking for another form" of Botox® (#268 at 1022). He further testified that Defendant demonstrated how to reconstitute TRItox, but would not let Bundy write down the amounts and other instructions (#268 at 1033-1035). Defendant also instructed Bundy to request more of this "stronger" product from Mrs. Seldon's father who stored it in his garage (#268 at 1036). This product was known in the office as "the other Botox®" (#268 at 1038). Following the search of Defendant's place of business, Defendant told Bundy not to talk to anyone about the investigation "otherwise [the employees] would lose [their] jobs" (#268 at 1045). Following that conversation, Defendant asked Bundy to find

a vial labeled "SS" in the office, which Defendant retrieved from Bundy and presumably destroyed mere hours later (#268 at 1049).

Doctor Crutchfield testified that at a TRItox conference Defendant gave "the impression that [Defendant] was familiar with the Botox® alternative and he believed it to be similar, if not equivalent, to [Botox®]" (#268 at 1155). During this conference, at which Defendant presented, Dr. Crutchfield rode next to Defendant on a bus where advertisement cards for TRItox were placed on each seat (#268 at 1156). A former patient of Defendant's, Desiree Dante-Mueller, also testified that Defendant injected her from a bottle without a label, which was larger than the Botox® vials she had seen when receiving treatments from other physicians. (#269 at 1456).

Chad Livdahl, the founder of Toxin Research International, the purveyor of TRItox, testified that Defendant approached him at a convention where Defendant "said he was already getting [TRItox]" (#269 at 1515, 1518). Livdahl further testified to providing an on-site training for Defendant and his staff at which TRItox was discussed (#269 at 1523-24). Livdahl also testified that he asked Defendant to present at conferences for him because Defendant was familiar with TRItox and its use. (#269 at 1532). Livdahl further testified that Defendant injected attendees with TRItox (#269 at 1537). Mr. Livdahl was also Defendant's house-guest (#269 at 1558-59, #430 at 1595). Following the lengthy altering of records at Defendant's place of business, Livdahl returned to Defendant's home where they "sat around an talked about the hell that we just went through" (#269 at 13-20). Defendant was also present during the road-trip from Las Vegas, Nevada to Scottsdale, Arizona where additional TRItox was purchased and retrieved from Livdahl's "stash" (#269 at 1571). Defendant was present while the labels were removed from the TRItox vials retrieved from the "stash" (#430 at 1586).

Given Defendant's extensive involvement, there is no plausible argument that Mrs. Seldon and not Defendant is to blame. Even if the Court were to find– which it emphatically does not–that Mrs. Seldon acted alone in procuring TRItox, Defendant was at minimum clearly aware that he was

4

injecting a counterfeit substance into his patients because the labels were not "Botox®." No actual conflict adversely affected Richards' performance because blaming it all on Mrs. Seldon is simply not a plausible defense strategy. No hearing is necessary, and no relief will issue under this claim.

## II. Ineffective Assistance of Counsel

The bulk of Defendant's claims are for ineffective assistance of counsel. It is worth noting that many of these same claims arise subsequently, couched as failures of the Government rather than as failures of Defendant's counsel. While the Court applauds zeal in defending one's clients, such a "shotgun" approach adds little value while consuming the scarce resources of the Court.

### A. Legal Standard

To obtain relief for ineffective assistance of counsel, Defendant must meet two difficult requirements. First, that defendant's counsel's representation fell below an objective standard of reasonableness, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). Second, that this deficient performance prejudiced the defense such that the result of the trial is unreliable. Id.

As to deficient performance, "[j]udicial scrutiny . . . must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation omitted). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (internal quotation omitted) (citing Strickland, 466 U.S. at 690). This question is answered by looking to "the objective reasonableness of counsel's performance." Id. at 790.

As to prejudice, "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Id. at 787. "Counsel's errors must be so serious as to deprive the defendant of a fair trial, [meaning] a trial whose result is reliable." Id. at 787-88 (internal quotation omitted) (citing Strickland, 466 U.S. at 687).

B. Addressing the Shortfall in Units Administered Versus Units Available

Defendant argues that Richards' failed to review the discovery in this matter, and consequently was ineffective in addressing the discrepancy between units of Botox® available and the units injected into patients. At the outset, Richards maintains that he did review the discovery in this case (#415; Ex. F at ¶¶10, 50).

There is no genuine dispute that Defendant administered more injections than could be covered by his supply of Botox®. At trial, Defendant testified that he used 19, 275 units, but later admitted the number was likely between 22,000 and 23,000. (#431at 1959, 2070). Defendant now argues that the correct number is 20,051. (#389 at 5). However, the Government asserts and Defendant does not challenge that only 15,600 units of Botox® were available (#389 at 5). Using any of these numbers, it is undisputed that several thousand units are simply unaccounted for.[3] Accordingly, the Court cannot find that the failure to calculate or advocate this new "20,051" number in any way deprived Defendant of a fair and reliable trial.

Defendant has further asserted that Richards was ineffective in failing to call an expert to testify regarding the discrepancy in units. Given the wide deference given to trial counsel, the Court cannot find that failing to call an expert "amounted to incompetence." Best practice is not the

---

[3]Defendant suggests that perhaps "chart notes" might be used in place of the billing sheets, which would result in only 14,525 units being used. However, no grounds whatever are asserted for the use of chart notes in preference to the billing sheets. Defendant himself used the billing sheets in his calculations because they were created concurrently with treatment and so are "a far better indicator" than anything created from subsequent memory (#431 at 1964). Given the superior reliability of the billing sheets and the dramatic discrepancy between this proposed measure and all others, the Court cannot find that the failure to calculate or advocate this number deprived Defendant of a fair and reliable trial. Further, failure to advocate such an easily discredited number constitutes sound trial strategy to which this Court must defer. No hearing is necessary and no relief is available on this theory.

standard here. While it may have been wiser not to place Defendant on the stand, the Court may not second guess this tactical decision. Further, given that now, several years later, no substantive developments have occurred regarding the number of units used, the Court cannot find that Defendant was deprived of a fair and reliable trial. No hearing is necessary and no relief will issue under this theory.

### C. Dealing with the Alteration of Patient Records

Defendant argues that he received ineffective assistance of counsel because Richards failed to review the discovery, and consequently failed to note that Defendant continued to use the word "Botox®" in his paper patient charts after the electronic records were altered. This argument is unavailing.

First, Richards maintains that he did review the discovery in this matter (#415; Ex. F at ¶¶10, 50). Second, the bulk of the evidence regarding botulinum toxin usage–including Defendant's own testimony–was that Defendant continued to use the term "Botox®" throughout the relevant period. (#431 at 156-157, #269 at 39-40). It is therefore at best cumulative to note that Defendant also made reference to Botox® in the paper patient charts. Failing to attempt to introduce cumulative evidence does not "amount to incompetence," but rather the opposite. Further, depriving the jury of such minor and cumulative evidence cannot and did not deprive Defendant of a fair and reliable trial. No hearing is necessary and no relief is available on this claim.

### D. Dealing with Defendant's Low Advertised Price for Botox®

Defendant argues that Kevin O'Brien gave false testimony that Defendant advertised Botox® for less than any other competitor, and that Richards failed to contradict that testimony because he failed to review the discovery (#389 at 6). Again, to succeed, Defendant is required to 1) overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and 2) show that the relevant error deprived Defendant of a reliable result at trial. Harrington, 131 S. Ct. at 787-88 (citing Strickland, 466 U.S. at 687).

First, Richards maintains that he did review the discovery in this matter (#415; Ex. F at ¶¶10, 50). Second, the Court notes that the pricing testimony was a single tile in what, as shown above, was an elaborate mosaic depicting Defendant's guilt. Third, on cross-examination, Richards asked O'Brien if he was aware that "another doctor here in Las Vegas [] was advertising for [less than Defendant]?" (#265 at 853). Fourth, in closing argument, Richards told the jury that "First [the Government] tried to say that something's wrong in Dr. Seldon's office because there's cheap ads. . . all these ads you're gonna get, you're gonna see so many doctors selling for [approximately the same price as Defendant]. You're gonna see that." (#270 at 259).

In short, Richards did contradict O'Brien's testimony. Accordingly, Richards' conduct was within the wide range of appropriate professional assistance. However, even if Richards failed to challenge O'Brien's testimony, given the breadth and depth of evidence in this case, it would not render Defendant's conviction unreliable. Accordingly, no hearing is necessary and no relief is available on this claim.

E. Dealing with Livdahl's "Secret Sale"

Defendant argues that the evidence in this case contradicts Chad Livdahl's testimony that he conducted a "secret sale" of some 132 vials of Tritox, and that Richards was ineffective in failing to make this argument to the jury (#389 at 7-9). Defendant argues that Richards failed to make this argument because Richards did not review the discovery in this matter.

As noted above, Richards maintains that he did review the discover in this matter (#415; Ex. F at ¶¶10, 50). However, and more importantly, Richards in fact argued that the evidence in this case contradicted Chad Livdahl's testimony (#273 at 20-21). Defendant concedes this fact (#426 at 5). Defendant, however, argues that Livdahl's previous sworn statement should have been used to impeach the testimony. This argument was addressed substantively in the Court's prior order, and no relief issued because admission of the sworn statement would not have changed the outcome (#367 at 5-6). The Ninth Circuit agreed, noting that "there is no reasonable probability that, had the evidence

been disclosed...the result of the proceeding would have been different." (#400 at 2-4) (internal quotation and citation omitted).

Given the wide discretion afforded to trial counsel, the Court cannot say that failing to impeach using a specific document in place of "doing the math" constitutes incompetence. Further, this supposed deficiency could not and did not make the result of the trial unreliable, as already determined by both this Court and the Ninth Circuit. Accordingly, no hearing is necessary and no relief is available on this ground.

### F. Failing to Investigate the Case

This claim amounts to a mere rehashing of the argument that Richards was ineffective in failing to discover or use Chad Livdahl's sworn statement in which he denied making any further sales of Tritox, which would contradict his testimony in the present case of a "secret sale." This claim fails for the same reasons stated immediately above. However, to be clear, this Court and the Ninth Circuit have already addressed this question, and found that no relief should issue because there was no reasonable probability that the result of the trial would have been different. (##367 at 5-6, 400 at 2-4). Accordingly, no prejudice occurred, preventing relief under a claim for ineffective assistance of counsel. Further, Richards impeached Livdahl's testimony by "doing the math" (#273 at 20-21). Richards also attacked Livdahl's credibility thoroughly (#270 at 243-244). Accordingly, the Court cannot not find deficient performance. No hearing is necessary and no relief is permissible on this claim.

### G. The "Florida Incident"

Defendant appears to concede the Government's argument as to this claim, failing to reply to the Government's response (#426). At bottom, Defendant alleges that Richards provided ineffective assistance of counsel for not objecting under Rule 403 to the Government's reference to the "Florida Incident" in which four individuals nearly died after being injected with botulinum toxin produced in the same facility which produced Tritox. Rule 403 reads "The court may exclude relevant evidence if

its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As correctly noted by the Ninth Circuit, "The Florida Incident was certainly relevant: it provided context for the government's investigation of Livdahl and, later, appellants, as well as critical background for testimony regarding appellants' concealment and related conduct that were admissible as evidence of consciousness of guilt, and thus of guilt itself" (# 312 at 3-4) (internal citations, quotations, and alterations omitted). Accordingly, the Florida Incident has substantial probative value. Further, the jury was repeatedly informed that Tritox was not the substance involved in the Florida Incident (#259 at 166, #269 at 1501, 1543-44, 1549, #270, 2345). Given these two facts, the Court would not have sustained an objection based on Rule 403 to this evidence. Accordingly, no prejudice can be found.

Further, failing to object to such permissible references certainly falls within the substantial discretion afforded to trial counsel and does not amount to incompetence. This conclusion is only strengthened by Richards' statement that the failure to object was a tactical decision (#415, Ex. F at ¶47). For the above reasons, no hearing is necessary and no relief is available on this claim.

H. Failure to Prepare Defendant to Testify

Defendant here claims that Richards' was ineffective in preparing Defendant to testify, and in preparing Defendant's summary chart. This claim has already been addressed in part in II(B) above. There is no question that Defendant's testimony went poorly, and that "gaping holes" were found. Objectively, it appears possible that Richards' preparation of Defendant to testify was incompetent, even given the highly deferential nature of the Court's review.

However, even if the Court were fully convinced that Richards incompetently prepared Defendant to testify, Defendant must show that Richards' error was so serious that it makes the result at trial unreliable. This, Defendant cannot do. As demonstrated above, and as clearly recalled by the

Court, the evidence of Defendant's guilt was overwhelming before Defendant ever took the stand. It is certainly possible that Defendant's testimony knocked another hole in the hull, but that is utterly irrelevant when the ship has already sunk. Accordingly, no hearing is necessary and no relief is permissible under this claim.

### I. Ineffective Assistance of Counsel Regarding Loss Amount Calculations

This claim is substantially identical to that addressed in II(B) above. In essence, Defendant alleges that because Richards failed to review the discovery, Richards was unable to challenge the loss amount derived from the discrepancy between the number of injections made and the available supply of Botox®. As noted above, Richards maintains that he did review the discovery (#415, Ex. F at ¶¶ 10-14, 50). Further, Richards did object to the loss calculation (#170 at 6). The only remaining portion of this claim is that the number of units Defendant injected was incorrectly calculated. This argument fails for the reasons explained in II(B) above. No hearing is necessary and no relief is permissible under this claim.

### III. Deprivation of Due Process

"Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979). And, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent'." Bousley v. United States, 523 U.S. 614, 622 (1998) (internal citations omitted).

Defendant has not–and cannot successfully–allege that he is actually innocent. Accordingly, Defendant must demonstrate "cause" for failing to raise his claims on direct appeal, and also that these alleged errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007) (citing U. S. v. Frady, 456 U.S. 152, 170 (1982)) (emphasis in original).

///

### A. The Summary Chart

Defendant alleges that the Government's summary chart was misleading and inaccurate because it did not employ the lower calculations advocated by Defendant and analyzed in II(B) above. Defendant claims that this "fact" was not available during direct review. This is false. The accuracy of the Summary Chart was a prominent feature at trial and was fully and fairly litigated there. There are no new facts which were unavailable prior to appeal. Accordingly, no cause has been shown. However, even if cause were shown, no prejudice resulted. As described at length above in II(B), all meaningful estimates of the usage were thousands of units beyond the units of Botox® available to Defendant. Accordingly, the Court cannot reach the merits of this claim. However, even if the Court could address the merits, it is virtually certain that no relief would be available. No hearing is necessary and no relief is permissible under this claim.

### B. Failing to Tell the Jury that Defendant Continued to Refer to Botox®

Defendant's claim is essentially that the Government was obliged to tell the Jury that Defendant continued to refer to Botox® in his patient charts even after the software was altered to erase all references to Botox®. As for "cause," it was undisputed throughout the trial that Defendant continued to refer to Botox® even after the alteration of patient records. In fact, as discussed in II(C), this fact was predicate to both the Government's and Defendant's summary charts regarding botulinum injections. (#431 at 156-157, #269 at 39-40). Accordingly, there appears to be scant cause for failing to raise this claim on appeal. However, even if cause is found, there can be no prejudice. As discussed in II(C) above, the evidence was minor and cumulative, and could not have affected the outcome of the trial in any way. Accordingly, the Court may not address the merits of this claim. However, even if the Court were to address the merits, attempting to burden the Government with establishing a largely superfluous fact in Defendant's own case is unlikely to avail Defendant. No hearing is necessary and no relief is permissible on this claim.

///

C. Botox® Pricing Testimony

According to Defendant, "The prosecutor did not ask the witness about the other advertisements in the magazine, nor about all of the other advertisements in the magazines which had been collected by the government which demonstrated that the price charged by the Sedons [sic] for Botox was a "market price" and not proof that the product must not have been Botox." As noted above in II(D), this discrepancy was noted and presented to the Jury. Accordingly, no prejudice could result from this fact. Further, these facts were quite obviously available to Defendant prior to appeal. Accordingly, the Court cannot reach the merits of this matter. However, if the Court were to reach the merits it would almost certainly fail for the reasons already addressed. No hearing is necessary and no relief is permissible on this claim.

D. Failure to Disclose Chad Livdahl's Affidavit Contradicting the "Secret Sale"

As addressed above in II(E), both this Court and the Ninth Circuit have already addressed this issue. As a previous direct appeal addressed this issue, no relief is possible on this ground. Currie, 589 F.2d at 995.

IV. Allowing Chad Livdahl to Testify

Defendant here argues that Chad Livdahl's testimony was so "degraded by perjury" that "constitutional boundaries are violated." However, this could and should have been addressed on appeal. There is no "cause" for not having done so, as the untrustworthy nature of Livdahl's testimony was apparent at trial, and addressed by this Court prior to appeal (#367 at 4). Further, no erroneous actual and substantial disadvantage accrued to Defendant. Chad Livdahl was throughly impeached at trial, and the Court issued an instruction to the Jury that they should consider the factors that may have influenced Chad Livdahl's testimony, and that they should examine his testimony "with greater caution than that of other witnesses." (#270 at 164). For these reasons, the Court cannot reach the merits of this claim. However, even if the Court were to reach the merits, it is

virtually certain that no relief would be available. No hearing is necessary, and no relief is permissible under this claim

V. Conclusion

Defendant Stephen Lee Seldon's ("Defendant") motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence (#389), as well as Defendant's sealed motion under 28 U.S.C. §2255 (#390) are **HEREBY DENIED**.

DATED this 6th day of February 2014.

_____
Kent J. Dawson
United States District Judge